# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:19-CV-80518-ROSENBERG/REINHART

OPEN ACCESS FOR ALL, INC.
and ANDRES GOMEZ,

    Plaintiffs,

v.

TOWN OF JUNO BEACH, FLORIDA,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

**THIS MATTER** is before the Court upon Defendant Town of Juno Beach's Motion to Dismiss Plaintiffs' Amended Complaint and Supporting Memorandum of Law [D.E. 17]. The Court has carefully reviewed the Motion, Plaintiff's Response [D.E. 20], Defendant's Reply [D.E. 22], and the record, and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion to Dismiss is denied.

## I. BACKGROUND

Plaintiff Open Access For All, Inc. ("Open Access") is a non-profit corporation that advocates for full and equal participation of its members in all aspects of society. Amend. Compl. ¶¶ 16, 18, D.E. 10. Its members include individuals substantially limited in the major life activity of sight. *Id.* ¶ 17. Plaintiff Andres Gomez is legally blind and "substantially limited in the major life activity of seeing." *Id.* ¶ 24. To comprehend information on the internet, Mr. Gomez must use screen reader software that requires document information to be saved in an accessible format. *Id.* ¶ 26. Defendant Town of Juno Beach, Florida, a local government entity, offers a website,

www.juno-beach.fl.us ("website"), where people can obtain information regarding Defendant's government and living in and visiting Defendant. *Id.* ¶¶ 28, 32.

Plaintiffs allege the following: Mr. Gomez either "is considering moving" or "has concrete plans to move" from Miami. *Id.* ¶¶ 33, 46. He has traveled throughout Florida, has researched viable living options, and has visited Defendant. *Id*. ¶¶ 33, 34. Mr. Gomez has found Defendant "to be delightful, encompassing all the amenities which would make it a good environment for him and his family." *Id.* ¶ 34. Defendant is a "viable option" for his home. *Id.* ¶¶ 33, 46. Defendant's website contains electronic documents that provide information on: (1) living in and visiting Defendant, such as electrical utility and plumbing fee sheets; (2) Defendant's policies and positions, such as tax receipt rules and regulations; and (3) council meeting agendas and decisions. *Id.* ¶¶ 36-39. Mr. Gomez needs the information within these electronic documents to assess his ability to move to Defendant. *Id.* ¶ 46.

As an advocate of public policy for the disabled, Mr. Gomez is allegedly interested in accessing Defendant's policies regarding the disabled. *Id.* ¶ 35. Mr. Gomez needs access to Defendant's past actions and policies before advocating for changes in current policy. *Id.* ¶ 53. Plaintiffs "have been left excluded from political advocacy with [Defendant's] government" because of Defendant's failure to provide electronic documents in an accessible format. *Id.* ¶ 49.

Mr. Gomez allegedly attempted to view Defendant's electronic documents in January 2019. *Id.* ¶ 41. "Because Defendant's electronic documents are not in an accessible format for the blind and visually impaired and are not provided in accessible HTML or PDF format, Plaintiffs [were] prevented from becoming informed about [Defendant's] governmental functioning, policies, programs, services and activities that Defendant offers to the disabled and infirm . . . ."

*Id.* ¶ 42. Mr. Gomez contacted Defendant and requested that the electronic documents be made accessible. *Id.* ¶ 44. The documents remain inaccessible. *Id.* ¶¶ 45, 48-49, 51-52.

Plaintiffs further allege that the inability to access Defendant's documents "has resulted in a virtual barrier which has impaired, obstructed, hindered, and impeded Plaintiffs' ability to become an involved citizen in advocating for the disabled" and to "learn about the programs, services, and activities available to disabled residents." *Id.* ¶ 50. Plaintiffs "have suffered injuries and shame, humiliation, isolation, [and] segregation" and have "experienced emotional suffering, pain and anguish." *Id.* ¶ 54.

Plaintiffs filed the instant lawsuit, claiming that Defendant is in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act because the electronic documents on Defendant's website are inaccessible to the visually impaired. Plaintiffs seek declaratory and injunctive relief and damages. D.E. 10. Defendant moves to dismiss the Amended Complaint under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. D.E. 17.

## II. LEGAL STANDARD

The question of Article III standing implicates subject matter jurisdiction and, thus, standing must be addressed as a threshold matter prior to addressing the merits of any underlying claims. *Palm Beach Golf Ctr.–Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015). Article III of the Constitution grants federal courts judicial power to decide only actual "Cases" and "Controversies." U.S. Const. art. III, § 2. Standing is a "core component" of this limitation that "determin[es] the power of the court to entertain the suit." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264–65 (11th Cir. 2011) (quotation marks omitted). "[A] dismissal for lack of standing has the same effect as a dismissal for lack of subject

matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (quotation marks omitted).

A court may grant a party's motion to dismiss if a pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must contain more than labels, conclusions, a formulaic recitation of the elements of a cause of action, and naked assertions devoid of further factual enhancement. *Id.* The factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. When ruling on a motion to dismiss, a court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *West v. Warden*, 869 F.3d 1289, 1296 (11th Cir. 2017).

## III. ANALYSIS

### A. Plaintiff Gomez's Standing

Defendant argues that Plaintiff lacks Article III standing to pursue his claims because he has no immediate threat of future injury.

> A plaintiff must demonstrate three things to establish standing under Article III. First, he must show that he has suffered an injury-in-fact. Second, the plaintiff must demonstrate a causal connection between the asserted injury-in-fact and the challenged action of the defendant. Third, the plaintiff must show that the injury will be redressed by a favorable decision. These requirements are the irreducible minimum required by the Constitution for a plaintiff to proceed in federal court.

> In addition, [b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate- as opposed to a merely conjectural or hypothetical-threat of *future* injury.

*Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (citations and quotation marks omitted).

 "[T]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing . . . ." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (quotation marks omitted). Statutes can create an Article III injury-in-fact for testers. *See id* at 373-74. Testers of ADA compliance may have standing to pursue their claims, though they still must satisfy the requirements of standing per Article III of the Constitution. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332-34 (11th Cir. 2013) (concluding that a tester had standing to bring a claim under Title III of the ADA based on the statutory language of the ADA).

Title II of the ADA provides that "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must allege: "(1) that he is a 'qualified individual with a disability;' (2) that he was 'excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of such disability.'" *Shotz*, 256 F.3d at 1079 (quoting 42 U.S.C. § 12132).

The Rehabilitation Act serves to protect individuals with disabilities. *See* 29 U.S.C. § 701. Section 504 of the Rehabilitation Act states that no disabled individual "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To establish a prima facie case under the Rehabilitation Act, the plaintiff must

demonstrate that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

"Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases . . . ." *Id.* Therefore, Mr. Gomez's standing to bring claims under the ADA and the Rehabilitation Act can be addressed together.

The Department of Justice ("DOJ") is tasked with promulgating regulations to enforce the ADA. 42 U.S.C. § 12134(a). DOJ has stated that Title II of the ADA applies to websites:

> Although the language of the ADA does not explicitly mention the Internet, the Department has taken the position that title II covers Internet Web site access. Public entities that choose to provide services through web-based applications (e.g., renewing library books or driver's licenses) or that communicate with their constituents or provide information through the Internet must ensure that individuals with disabilities have equal access to such services or information, unless doing so would result in an undue financial and administrative burden or a fundamental alteration in the nature of the programs, services, or activities being offered. . . . [A]n agency with an inaccessible Web site may also meet its legal obligations by providing an alternative accessible way for citizens to use the programs or services, such as a staffed telephone information line.

28 C.F.R. Pt. 35, App. A.

There is scant caselaw in this Circuit addressing standing in the context of ADA Title II claims related to websites. *See Price v. City of Ocala*, 375 F. Supp. 3d 1264, 1272 (M.D. Fla. 2019) ("[T]here has been little discussion of what it takes to satisfy standing or to state a claim in Title II website cases."). Defendant relies heavily on the factors set forth in *Price* in arguing that Mr. Gomez lacks standing. *See* D.E. 17 at 3-9; *see also Price*, 375 F. Supp. 3d at 1273-75. The factors to "be considered along with the totality of the relevant facts [include]: (1) plaintiff's connection with the defendant governmental entity; (2) the type of information that is inaccessible; and (3) the relation between the inaccessibility and a plaintiff's alleged future harm." *Price* 375 F. Supp. 3d at 1275.

Here, Mr. Gomez has made allegations that, accepted as true, show that he has suffered an injury in fact. Mr. Gomez is looking for a new place to live. Amend. Compl. ¶¶ 33-34, 46. He has visited Defendant in the past, has enjoyed it, and considers it a viable living option. *Id.* ¶¶ 33-34, 46. He needs to assess what Defendant's policies are for the disabled and infirm and whether Defendant is a fit for his family. *Id.* ¶¶ 35-36, 46. To make this assessment, he needs access to the electronic documents on Defendant's website, which include electrical utility and plumbing fee sheets, tax receipt rules and regulations, annual financial reports, and council agendas and decisions. *Id.* ¶¶ 36-39, 46. Mr. Gomez is unable to access the information that individuals without a visual impairment are able to access.

The allegations in this case are distinguishable from *Price*, where the court found that the plaintiff lacked standing and ordered the plaintiff to amend the complaint. *See Price* 375 F. Supp. 3d at 1276-77. Unlike in *Price*, Mr. Gomez alleged that he has concrete plans to move from Miami and that he visited Defendant in the past. This creates a connection between Mr. Gomez and Defendant. Mr. Gomez requires information contained in electronic documents on Defendant's website to determine if Defendant is a viable living option. The plaintiff in *Price* did not allege what information was inaccessible to him. Here, the inaccessible information includes electrical utility and plumbing fee sheets, tax receipt rules and regulations, annual financial reports, and council agendas and decisions. It is reasonable that this information may impact Mr. Gomez's decision whether to move to Defendant. Plaintiffs' allegations are sufficient to establish that Mr. Gomez has standing to bring his claims under the ADA and the Rehabilitation Act.

## B. Plaintiff Open Access's Standing

Defendant argues that Open Access also lacks Article III standing to pursue its claims. An injured party generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of a third party. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). However, an association has standing solely to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The Court's conclusion that Mr. Gomez has alleged sufficient facts to establish standing satisfies the first prong of the *Hunt* test.[1] Under the second prong, the allegations show that the interest that Open Access seeks to protect—accessibility by the blind and visually impaired to the electronic documents on Defendant's website—is germane to its purposes. Open Access advocates for the full and equal participation of its members in all aspects of society. Amend. Compl. ¶ 18. It "is devoted to the goal of full inclusion, equality, and civil rights for its members, who are blind or visually impaired and whose lives are directly affected by loss of sight." *Id.* Its membership includes individuals who are substantially limited in the major life activity of sight. *Id.* ¶ 16.

As to the third prong of the *Hunt* test, an ADA claim is one which an advocacy group may assert on behalf of its members. *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1301-02 (S.D. Fla. 2013) (citing *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999)); *see also Wein v. Am. Huts, Inc.*, 313 F. Supp. 2d 1356, 1360-61 (S.D. Fla. 2004) (concluding that an advocacy group had standing to pursue declaratory and injunctive relief on behalf of its members under the

---

[1] Defendant does not address the second and third prongs of the *Hunt* test, instead focusing on Mr. Gomez's lack of standing. The Court nevertheless addresses these prongs.

ADA). Therefore, Open Access has alleged sufficient facts to establish associational standing to advance ADA and Rehabilitation Act claims on behalf of its members.

## C. Primary Jurisdiction

Defendant also argues that dismissal is appropriate under the primary-jurisdiction doctrine because DOJ has not promulgated specific guidelines on website accessibility. The primary-jurisdiction doctrine provides that a "court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the action by an administrative agency." *Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.3 (11th Cir. 2001) (quotation marks omitted). "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). The purpose of the primary jurisdiction doctrine is to "protect[] the administrative process from judicial interference." *Sierra v. City of Hallandale Beach*, 904 F.3d 1343, 1350 (11th Cir. 2018) (quotation marks omitted).

Here, Defendant asks the court to defer to DOJ, which is tasked with providing guidance on the ADA. *See* 42 U.S.C. § 12134(a). DOJ has issued regulations on Title II's prohibition against discrimination and its application to websites. DOJ regulations provide that public entities are prohibited from "providing any aid, benefit, or service" that "afford[s] a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii). Public entities must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the

modifications would fundamentally alter the nature of the service, program, or activity." *Id.* § 35.130(b)(7).

Public entities shall further "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." *Id.* § 35.160(a)(1). To this end, public entities are required to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160(b)(1). As discussed above, DOJ "has taken the position that Title II covers Internet Web site access." 28 C.F.R. Pt. 35, App. A.

> Public entities that choose to provide services through web-based applications . . . or that communicate with their constituents or provide information through the Internet must ensure that individuals with disabilities have equal access to such services or information, unless doing so would result in an undue financial and administrative burden or a fundamental alteration in the nature of the programs, services, or activities being offered.

*Id.*

Defendant has pointed to no authority indicating that DOJ has taken the position that judicial deference on website accessibility is warranted. *See Sierra,* 904 F.3d at 1351 ("Because the primary-jurisdiction doctrine is prudential, not jurisdictional, we see no reason why deference to an agency is appropriate when that agency itself feels that no deference is warranted."). In addition, Defendant has pointed to no authority indicating that DOJ is engaged in further rulemaking in this area. *See id.* at 1350 (stating that the aim of the primary-jurisdiction doctrine is to "protect[] the administrative process from judicial interference" (quotation marks omitted)). In fact, as Defendant notes, DOJ withdrew previously proposed advance notices of proposed rule-making pertaining to website accessibility under the ADA. *See* 82 Fed. Reg. 60932-01 (Dec. 26,

2017). Thus, deference to DOJ is not warranted in this case, and dismissal under the primary-jurisdiction doctrine is inappropriate.

## IV. CONCLUSION

Based on the foregoing analysis, it is hereby **ORDERED** and **ADJUDGED** that Defendant's Motion to Dismiss [D.E. 17] is **DENIED**.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 29th day of July 2019.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record